Opinion issued July 8, 2004



     












In The
Court of Appeals
For The
First District of Texas




NO. 01-02-00942-CR




RICHARD LOUIS BEASLEY, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 185th District Court
Harris County, Texas
Trial Court Cause No. 901947




MEMORANDUM OPINION
          Appellant, Richard Louis Beasley, was charged with felony aggregate theft of
more than $20,000, but less than $100,000. The indictment also alleged two prior
felony convictions. A jury found appellant guilty, found both enhancement
paragraphs true, and assessed punishment at 40 years’ confinement. We affirm.
I. BACKGROUND
          In August 2001, appellant opened an account with $700 cash at Union Planters
Bank (Union Planters). The account was a business checking account for appellant
d/b/a Ace Concrete, as reflected on an assumed name certificate that appellant
presented to the bank. There was little activity on the account for approximately two
months. However, between November 15 and November 23, large deposits were
made to the account at various bank branches around the city. There were also
several large withdrawals from the account, which were made almost immediately
after the deposits. Soon thereafter, the bank discovered that the checks that had been
deposited into appellant’s account were being returned as “no account found.” The
bank later determined that the checks were counterfeit. As a result of the counterfeit
checks, the bank lost over $25,000.
II. ISSUES AND ANALYSIS
A. Denial of Appellant’s Motion to Quash the Indictment
          In two points of error, appellant contends the trial court erred by denying his
motion to quash the indictment because the indictment did not allege (1) the specific
acts of theft that were aggregated or (2) that the theft was “without the effective
consent of the owner.”
          We review a trial court’s denial of a motion to quash for an abuse of discretion. 
Geter v. State, 779 S.W.2d 403, 404 (Tex. Crim. App. 1989); Jordan v. State, 56
S.W.3d 326, 329 (Tex. App.—Houston [1st Dist.] 2001, pet. ref’d). A trial court
abuses its discretion by denying a motion to quash only if the language of the
indictment is so vague or indefinite as to deny the defendant effective notice of the
acts he allegedly committed. See DeVaughn v. State, 749 S.W.2d 62, 67 (Tex. Crim.
App. 1988), State v. York, 31 S.W.3d 798, 800-01 (Tex. App.—Dallas 2000, pet.
ref’d).
          1. Necessity of Pleading Specific Acts of Theft Aggregated
          In point of error one, appellant contends that the trial court should have granted
his motion to quash the indictment because it did not allege “with particularity the
exact dates and acts constituting the individual theft offenses the state was
aggregating.” The Court of Criminal Appeals has held that “[i]n a case of aggregated
theft under [Penal Code] 31.09, the indictment must allege the “continuing course of
conduct” element, but there is no pleading requirement that it include the specific acts
of theft that are aggregated.” Kellar v. State, 108 S.W.3d 311, 313 (Tex. Crim. App.
2003). 
          The court further noted that, while the statute may not require the specificity
urged by appellant, a defendant does have a constitutional right to sufficient notice
to enable him to prepare a defense. Id. The court held that actual notice of the
specific instances of theft upon which the State was basing its allegations was
sufficient to enable the defendant to prepare his defense. Id. at 314.
          The record shows that appellant was given the opportunity to review “each and
every check that constitutes the indictment in this case.” In fact, appellant does not
claim that he was unable to adequately prepare his defense; he asserts only that the
individual checks should have been listed in the indictment. The Kellar court holds
otherwise. 108 S.W.2d at 313-14.
          Accordingly, we overrule point of error one.
          2. Necessity of Pleading “Without the Effective Consent of the Owner”
          In point of error two, appellant contends that the trial court erred by overruling
his motion to quash the indictment because it does not allege that the appropriation
of money was accomplished “without the effective consent” of the owner. See Geter
v. State, 779 S.W.2d 403, 406-07 (Tex. Crim. App. 1989) (holding that “in a theft
prosecution where the State relies upon a defendant’s act or omission to negate
consent pursuant to § 31.01(4),


 the indictment must allege which of the statutory
negatives vitiated consent, or the indictment will be subject to a timely motion to
quash for lack of notice.”). However, simply because an indictment fails to convey
some requisite item of notice does not require reversal of a conviction. Id. Appellant
must also show that the State’s failure to give that notice had an impact on his ability
to prepare a defense. Id. at 407. In his brief to this Court, appellant makes no effort
to demonstrate that the defect in the indictment harmed his defense.
          Accordingly, we overrule point of error two.
          B. Denial of Appellant’s Motion for Mistrial
          In point of error three, appellant contends that the trial court erred by denying
his motion for mistrial after the court bailiff commented on appellant’s incarceration
in the presence of four veniremembers. We review the denial of a mistrial for an
abuse of discretion. Ladd v. State, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999).
          During voir dire, appellant moved for a mistrial because he claimed that the
bailiff had, in the presence of four veniremembers, stated that the appellant needed
to be brought back to the jail so that he could receive his medicine. Appellant argues
that this statement is the equivalent of parading him before the jury in shackles and
prison garb and infringes on the presumption of innocence. 
          In Cooks v. State, 844 S.W.2d 697, 722-23 (Tex. Crim. App. 1992), the
defendant was shackled by a two-foot chain around his ankles during trial. The Court
of Criminal Appeals held that error, if any, caused by the shackling was harmless
because there was no evidence that the jury ever saw the shackles. Id. at 723.
          In this case, there is no evidence that the four veniremembers heard the bailiff’s
comment. Similarly, there is no evidence that the four veniremembers ever served on
the jury, such that appellant’s presumption of innocence was compromised during the
guilt/innocence phase of the trial. As such, appellant has failed to meet his burden
of showing that the bailiff’s comment harmed him.
          Accordingly, we overrule point of error three.
C. Denial of Challenge for Cause at Voir Dire
          In point of error four, appellant contends that the trial court erred by refusing
to strike veniremember 13 for cause because “she had already prejudged the case
against the defendant.” We afford great deference to the trial court’s decision
because “[i]t is the trial judge who has the opportunity to view each venireman’s
demeanor, evaluate his credibility and, ultimately, who is in the better position to pass
on the challenges for cause presented.” Satterwhite v. State, 858 S.W.2d 412, 415
(Tex. Crim. App. 1993). This ruling will not be disturbed absent a showing of an
abuse of discretion. Id.; Williams v. State, 773 S.W.2d 525, 536 (Tex. Crim. App.
1988).           
          During voir dire, the following exchange took place:
[Defense Counsel]: Okay. Who else cannot be – cannot be impartial–
who cannot be impartial in this type of a case without knowing the
facts? Is there anybody who’s already prejudged this particular case? 
Okay. Juror?
 
[Veniremember]: 13.
 
[Defense Counsel]: 13. Who else. Anybody in the second row? Third
row?

          Article 35.16(a)(10) of the Code of Criminal Procedure provides that either
party may make a challenge for cause when
[t]here is established in the mind of the juror such a conclusion as to the
guilt or innocence of the defendant as would influence him in his action
in finding a verdict. To ascertain whether this cause of challenge exists,
the juror shall first be asked whether, in his opinion, the conclusion so
established will influence his verdict. If he answers in the affirmative,
he shall be discharged without further interrogation by either party or
the court. If he answers in the negative, he shall be further examined as
to how his conclusion was formed, and the extent to which it will affect
his action; and, if it appears to have been formed from reading
newspaper accounts, communications, statements or reports or mere
rumor or hearsay, and if the juror states that he feels able,
notwithstanding such opinion, to render an impartial verdict upon the
law and the evidence, the court, if satisfied that he is impartial and will
render such verdict, may in its discretion, admit him as competent to
serve in such case. If the court, in its discretion, is not satisfied that he
is impartial, the juror shall be discharged.

Tex. Code Crim. Proc. Ann. art. 35.16(a)(10) (Vernon Supp. 2004) (emphasis
added). “In order for a challenge for cause to be sustained under Article 35.16(a)(10),
the challenging party must show that the veniremember has established in his mind
a conclusion as to the guilt or innocence of the defendant and that this conclusion will
influence his verdict.” Cannady v. State, 11 S.W.3d 205, 209 (Tex. Crim. App.
2000).
          In this case, veniremember 13's response indicated only that she had prejudged
the case. There is nothing in the record to show what she had prejudged or that she
had prejudged the case in favor of either appellant or the State. There was no follow-up questioning by either party or the court to determine whether veniremember 13's
prejudged conclusion would influence her verdict. At best, appellant has shown that
veniremember 13 had “established in [he]r mind a conclusion as to the guilt or
innocence of the defendant,” but has not shown that “such a conclusion would have
influenced [veniremember 13's] verdict.” As such, appellant has not shown that the
trial court abused its discretion by refusing to excuse veniremember 13 for cause. See
Marable v. State, 840 S.W.2d 88, 92 (Tex. App.—Texarkana 1992, pet. ref’d)
(holding trial court did not err by refusing to excuse veniremember for cause because
veniremember was never asked whether she had reached conclusion as to guilt or
innocence of defendant that would have influenced her verdict).
          Accordingly, we overrule point of error four.
D. Denial of Batson Challenges
          In point of error five, appellant contends the trial court erred when its overruled
his Batson


 challenge to the State’s exercise of its peremptory strikes to remove three
black veniremembers. We review a trial court’s Batson ruling in the light most
favorable to it, applying a “clearly erroneous” standard of review. See Williams v.
State, 804 S.W.2d 95, 101 (Tex. Crim. App. 1991). A three-step procedure consists
of: (1) the accused’s making a prima facie case of purposeful discrimination; (2)
shifting the burden to the State to provide race-neutral explanations for its challenges,
and (3) shifting the burden back to the accused to prove the State’s reasons were only
a pretext for race-motivated strikes. Batson, 476 U.S. at 97, 106 S. Ct. at 1723. To
hold the trial court’s decision was clearly erroneous, the appellate court must be left
with a “definite and firm conviction that a mistake has been committed.” Vargas v.
State, 838 S.W.2d 552, 554 (Tex. Crim. App. 1992).
          Of the five black veniremembers, appellant exercised a peremptory strike
against one—a police officer. The State struck three of the remaining four black
veniremembers. The State struck veniremember 6 because the panelist (1) had a
problem considering life in prison as a possible punishment for the offense and (2)
had a brother in prison for forgery. The State struck veniremember 12 because the
panelist (1) had problems considering life in prison as a possible punishment for the
offense and (2) had some “bad check” cases herself and had some friends and
neighbors who had been accused in criminal cases. Finally, the State struck
veniremember 15 because the panelist (1) had problems considering life in prison for
the offense and (2) had relatives who had gone to prison.
          After the appellant made a prima facie showing of discrimination, the State
offered race-neutral reasons for its strikes. See Chambers v. State, 866 S.W.2d 9, 24
(Tex. Crim. App. 1993) (holding inability to consider full range of punishment a race-neutral reason for strike); Dorsey v. State, 940 S. W.2d 169, 175 (Tex. App.—Dallas
1996, pet. ref’d) (holding that family members convicted or charged with offense a
race-neutral reason strike). Thus, the issue in this case involves only the third prong
of the Batson analysis, i.e., whether appellant met his burden of proving that the
State’s reasons were only a pretext for race-motivated strikes.
          Appellant points out that the State did not strike two other jurors who stated
that they could not consider life in prison as a possible punishment for the offense,
and that these jurors actually served on the jury. Additionally, appellant points out
that five other veniremembers stated that they had family members or friends
involved with criminal histories and that these veniremembers were not struck by the
State. Such disparate treatment, appellant argues, is proof that the State’s strikes were
nothing more than a pretext for removing blacks from the jury. We disagree.
[W]hen the State has offered more than one plausible reason for striking
a venireperson, it is proper to review these reasons in their entirety in
order to assess whether the State’s explanation was valid or merely
pretextual. Where, as here, the State has offered numerous race neutral
reasons for its challenge, we cannot say that the fact that there were
other acceptable jurors possessing one or more of these objectionable
attributes is sufficient to establish disparate treatment. 

Cantu v. State, 842 S.W.2d 667, 689 (Tex. Crim. App. 1992). “‘Disparate treatment,’
as such, cannot automatically be imputed in every situation where one of the State’s
reasons for striking a venireperson would technically apply to another venireperson
whom the State found acceptable.” Id. 
          Although there were other veniremembers that also possessed at least one of
the attributes the State found objectionable, appellant does not point to any other
veniremember who possessed both of the objectionable attributes as did those upon
whom the State exercised its peremptory strikes. As such, the trial court’s ruling that
the State’s strikes were race-neutral, and not pretextual, was not clearly erroneous.
          Accordingly, we overrule point of error five.
E. Written Waiver of Right to Counsel
          In point of error six, appellant contends that the trial court erred by not
obtaining a written waiver of his right to counsel, as set forth in Tex. Code Crim.
Proc. Ann. art. 1.051(f),(g) (Vernon Supp. 2004). In Burgess v. State, 816 S.W.2d
424, 429 (Tex. Crim. App. 1991), the Court of Criminal Appeals held that if an
accused affirmatively asserts his constitutional right to self-representation, article
1.051(f) and (g) do not require a written waiver. 
          In this case, appellant affirmatively and repeatedly asserted his right to self-representation. The record further shows that the trial court complied with the
requirements of Faretta v. California, 422 U.S. 806, 95 S. Ct. 2525, 2541 (1975)
(stating defendant “should be made aware of the dangers and disadvantages of
self-representation, so that the record will establish that ‘he knows what he is doing
and his choice is made with eyes open.’”). As such, no written waiver was required. 
Burgess, 816 S.W.2d at 429.
          We overrule point of error six.
F. Notice of Extraneous Offense Evidence
          At trial, the State offered the testimony of Bob Yeomans, a fraud investigator
for Union Planters, who testified about worthless checks that had been drawn on
appellant’s Ace Concrete account and had been subsequently cashed at Ace
America’s Cash Express (Ace America). Yeomans testified that four checks drawn
on appellant’s Ace Concrete account—made payable to Lisa Armacost, James
Peques, and Evett Allen—were cashed at Ace America. Because the Ace Concrete
account had a negative balance, Union Planters returned the checks as “NSF” (no
sufficient funds). Yeomans testified that, as a result, Ace America was “left holding
the bag.”
          In point of error seven, appellant contends the trial court erred by admitting the
evidence regarding the NSF checks written on appellant’s account that were cashed
by Ace America. Specifically, appellant contends that the State did not give notice
as required by Tex. R. Evid. 404(b), which provides:
Evidence of other crimes, wrongs, or acts is not admissible to prove the
character of a person in order to show that he acted in conformity
therewith. It may, however, be admissible for other purposes, such as
proof of motive, opportunity, intent, preparation, plan, knowledge,
identity, or absence of mistake or accident, provided that upon timely
request by the accused in a criminal case, reasonable notice is given in
advance of trial of intent to introduce in the State’s case-in-chief such
evidence other than that arising in the same transaction.

Id. (emphasis added). 

          When the State first offered the four NSF checks into evidence, appellant’s
counsel responded, “no objection.” Therefore, appellant has waived his right to
complain about the admission of the NSF checks. See Dean v. State, 749 S.W.2d 80,
83 (Tex. Crim. App. 1988) (defense counsel’s affirmative “no objection” to
admissibility of evidence introduced at trial waives right to complain of its admission
on appeal).
          To the extent that appellant is complaining about the admission of Yeoman’s
testimony, rather than the checks themselves, his complaint at trial came too late. To
preserve error for appellate review, the complaining party must make a timely
objection specifying the grounds for the objection if the grounds are not apparent
from the context, the objection must be made at the earliest possible opportunity, the
complaining party must obtain an adverse ruling, and the point of error on appeal
must correspond to the objection made at trial. Dixon v. State, 2 S.W.3d 263, 265
(Tex. Crim. App. 1998).
          The record shows that Yeoman testified at some length about how he tracked
down the four NSF checks before he concluded that Ace America was “left holding
the bag on this one.” At this point, defense counsel objected that “[t]here’s no
evidence as to whether it’s been paid or not paid. It may have been paid.” Therefore,
appellant’s first objection regarding Yeoman’s testimony does not correspond with
his point of error on appeal and does not preserve error.
          However, after 11 more questions by the State about the checks returned NSF
to Ace America, appellant finally objected that “any theft against this Ace check
cashing service was not included in [the State’s extraneous offense] notice.” Such
objection was not made at the “earliest possible opportunity.” Therefore, appellant’s
second objection was untimely and did not preserve error on appeal.
          Accordingly, we overrule point of error seven.
G. Admission of Other Extraneous Offense Evidence
          The State also offered the testimony of William Bowen, an investigator for 
Bank of America. Bowen testified that he was investigating “worthless checks” that
had been deposited in appellant’s account. At the same time he was investigating 
another account under the name of Andre L. McDonald, d/b/a Lloyd’s Roofing. 
Bowen noticed that counterfeit checks, purportedly drawn on the same Chase Bank
account, had been deposited into both appellant’s account and into McDonald’s
account. Bowen then examined videotapes from the bank and saw that appellant had
made deposits into McDonald’s account and his own account. Shortly after the
deposits were made, but before the checks could clear, withdrawals were made on the
accounts. Bowen testified that Bank of America lost $5882.
          1. Relevance under Rule 404?
          In point of error eight, appellant contends that the trial court erred by admitting
the testimony of William Bowen about the check theft investigation at Bank of
America. Appellant argues that this extraneous offense evidence was inadmissible
under Tex. R. Evid. 404 because it was offered for no other purpose than to show
“his general propensity for being a ‘con man.’” We disagree.
          Under Texas Rule of Evidence Rule 404(b), evidence of other crimes, wrongs,
or acts may be admissible to prove criminal intent. Extraneous offense evidence may
be admissible to prove scienter, where intent or guilty knowledge is an essential
element of the State’s case and cannot be inferred from the act itself. Albrecht v.
State, 486 S.W.2d 97, 101 (Tex. Crim. App. 1972). In this case, appellant’s counsel
several times suggested that appellant had innocently received the counterfeit checks,
which he had then deposited in his account. Thus, whether appellant possessed
criminal intent when he deposited the checks into his account was a critical issue in
the case because guilty intent cannot necessarily be inferred from the act of
depositing a check.
          The Texas Court of Criminal Appeals discussed the use of extraneous offense
evidence to prove intent in Plante v. State, 692 S.W.2d 487, 489 (Tex. Crim. App.
1985). In Plante, the defendant was charged with theft by deception after he
purchased over $10,000 worth of adobe tile and subsequently failed to pay for it. Id. 
The State’s theory of the case was that appellant had never intended to pay for the tile
at all. Id. At trial, the State introduced 35 other extraneous offenses, wherein the
defendant had purchased goods or services, but had never paid for them. Id. at 490. 
The Court of Criminal Appeals held that the extraneous offenses were relevant
because they made the defendant’s criminal intent more likely than would be assumed
in their absence. Id. at 943-44. In so holding, the court discussed the doctrine of
chances as follows:
Where the material issue addressed is the defendant’s intent to commit
the offense charged, the relevance of the extraneous offense derives
purely from ‘ the point of view of the doctrine of chances–the instinctive
recognition of that logical process which eliminates the element of
innocent intent by multiplying instances of the same result until it is
perceived that this element cannot explain them all.’

Id. at 491(quoting 2 Wigmore, Evidence, § 302 (Chadbourn rev. ed. 1979)). 

          In this case, the evidence that appellant had deposited counterfeit checks at
Bank of America also is relevant because it makes the innocent deposit of checks at
Planter’s bank less likely. 
          2. Unduly Prejudicial Under Rule 403?
          Evidence, even if relevant, may be excluded under Tex. R. Evid. 403 if the
danger of unfair prejudice substantially outweighs the probative value of the
evidence. Rule 403 favors admission of relevant evidence and carries a presumption
that relevant evidence will be more probative than prejudicial. Jones v. State, 944
S.W.2d 642, 652 (Tex. Crim. App. 1996). The trial court has broad discretion in
conducting a Rule 403 balancing test, and we will not lightly disturb its decision. 
Moreno v. State, 22 S.W.3d 482, 489 (Tex. Crim. App. 1999). 
          In this case, the issue of appellant’s criminal intent in depositing the counterfeit
checks was the critical issue in the case. As such, the State had a compelling need for
the evidence in order to counter appellant’s suggestion to the jury that he had
innocently received the counterfeit checks and deposited them in his account. As we
stated earlier, evidence that appellant had received and deposited counterfeit checks
in other banks was significant because it countered his theory that he had innocently
received the checks that he deposited with Union Planters. Finally, we note that the
jury was instructed in the charge that it could only consider the extraneous offense
evidence for the purpose of determining “the motive, opportunity, intent, preparation,
plan, knowledge, identity, or absence of mistake or accident of [appellant].” Under
these circumstances, we cannot say the trial court erred by overruling appellant’s Rule
403 objection.
          Accordingly, we overrule point of error eight.
H. Admission of Other Extraneous Offense Evidence
          In point of error nine, appellant contends that he is entitled to a new
punishment hearing because there was a fatal variance between an enhancement
paragraph in the indictment, which alleged a prior conviction for an aggravated
burglary in Ohio, and the proof at the punishment hearing, which showed a prior
conviction for burglary in Ohio. The fatal variance doctrine applies to enhancement
allegations. Human v. State, 749 S.W.2d 832, 837 (Tex. Crim. App. 1988). However,
enhancement allegations need not be alleged with the same particularity that must be
used in charging a primary offense. Freda v. State, 704 S.W.2d 41, 42 (Tex. Crim.
App. 1986). Not every variance between the indictment and the evidence is a fatal
variance. Stevens v. State, 891 S.W.2d 649, 650 (Tex. Crim. App. 1995). To show that
a variance is fatal, the defendant must prove that it misled him to his prejudice. Id.
          In Freda, the Court of Criminal Appeals held that even though an enhancement
paragraph in the indictment had alleged that a defendant had a prior conviction for
bank robbery, and the proof showed a prior conviction for conspiracy to commit
robbery, there was no fatal variance because the defendant did not show that he was
surprised to his prejudice. 704 S.W.2d at 43. The court noted that the indictment had
correctly alleged the date of the prior offense, the cause number of the prior offense,
the court returning the conviction for the prior offense, the location of the convicting
court, and the fact that the offense was a felony. Id.
          Similarly, in this case, the enhancement paragraph and the evidence show the
same cause number, the same date of conviction, the same number and location of the
convicting court, and the fact that the offense was a felony. We conclude that
appellant has failed to show that he was surprised to his prejudice by the variance
between the indictment and the proof. See also Tenner v. State, 850 S.W.2d 818, 820-21 (Tex. App.—El Paso 1993, no pet.) (holding that variance between indictment
alleging enhancement for prior conviction for aggravated robbery and proof of
enhancement for robbery was not fatal variance absent showing of surprise).
 
 
 
          Accordingly, we overrule point of error nine.
DISPOSITION
          We affirm the judgment of the trial court.
 
 
                                                             Sherry Radack
                                                             Chief Justice

Panel consists of Chief Justice Radack and Justices Alcala and Bland.

Do not publish. Tex. R. App. P. 47.2(b).